**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| XUENENG YAN,<br><br>Petitioner,<br>v.<br><br>CRAIG A. LOWE, et al.,<br><br>Respondents. | CIVIL ACTION NO. 3:26-CV-01987<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Xueneng Yan ("Yan") brings this petition for writ of habeas corpus. (Doc. 1). On July 15, 2026, Yan filed the instant petition, requesting that Craig A. Lowe, David Venturella, Markwayne Mullin, and Todd Blanche[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or provide him with a bond hearing. (Doc. 1, at 3). The government filed a timely response to Yan's petition on July 20, 2026 (Doc. 7), and on July 21, 2026 Yan filed a traverse. (Doc. 8). For the following reasons,

[1] The proper respondent in this case is Craig A. Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Yan is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 1); *see Rumsfeld*, 542 U.S. at 434. As such, David Venturella, Markwayne Mullin, and Todd Blanche are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Yan on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of CYanton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

Yan's petition (Doc. 1) is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Yan's petition and traverse, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 7; Doc. 8). Yan is a citizen of the Peoples Republic of China, who entered the United States on or about September 24, 2023. (Doc. 1, at 2). United States Border Patrol subsequently encountered Yan and issued him a notice to appear, charging him with removability as a noncitizen who entered the United States without inspection. (Doc. 1, at 2; Doc. 7, at 2). On July 3, 2025, the Pennsylvania State Police arrested Yan and charged him with theft by deception and criminal conspiracy. (Doc. 1, at 2; Doc. 7, at 2). On December 17, 2025, Yan pled guilty to both offenses, and the Northampton County Court of Common Pleas sentenced Yan to six to twelve months confinement. (Doc. 1, at 2; Doc. 7, at 2).

On January 5, 2026, ICE transferred Yan to immigration detention pursuant to an immigration detainer and warrant. (Doc. 1, at 2; Doc. 7, at 2). Between July 17, 2026 and July 20, 2026, guards at the Pike County Correctional Facility placed Yan in solitary confinement after Yan informed them that he was experiencing a skin condition, which a medical professional later diagnosed as a bacterial infection. (Doc. 8, at 6; Doc. 8-1, at 1). Yan also provides that he has been experiencing depression and suicide ideation while in immigration detention at the Pike County Correctional Facility. (Doc. 8, at 6; Doc. 8-1, at 1). On July 27, 2026, an immigration judge ordered Yan's removal during Yan's master calendar hearing. (Doc. 1, at 2; Doc. 7, at 2; Doc. 11, at 1); https://acis.eoir.justice.gov/en/caseInformation (last visited August 6, 2026). On August 5, 2026, Yan appealed his removal order to the Board of Immigration Appeals ("BIA"). (Doc.

11, at 1; Doc. 11-1, at 1). Yan remains detained at the Pike County Correctional Facility, where he has been in ICE custody for seven months. (Doc. 1, at 3).

## II. LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if it determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III. JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the INA strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR").

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil*, 164 F.4th at 278-79 (finding that length of confinement without a bond hearing claim "does not get channeled into the PFR review process"). Yan's petition is soundly before the Court because Yan filed the instant petition while detained within the jurisdiction of the Court, is still

currently detained by ICE, and asserts that his continued detention violates due process. *See J. G. G.*, 604 U.S. at 672 (acknowledging that immigration-related detainees' claims "fall within the 'core' of the writ of habeas corpus") (quoting *Nance*, 597 U.S. at 167); *see also Kahlil*, 164 F.4th at 274-79.

## IV. DISCUSSION

Yan contends that his prolonged mandatory detention is in violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 11). Lowe counters that Yan's mandatory detention under 8 U.S.C. § 1226(c) is constitutional because it has not been prolonged or arbitrary. (Doc. 7, at 5). Lowe also avers that Yan's claim is a substantive, not procedural due process claim, and that Yan has no substantive due process right to a bond hearing. (Doc. 7, at 11-17).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, the Supreme Court has recognized that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). Detention of noncitizens pending their removal proceedings serves the purpose of preventing noncitizens from fleeing before or during the removal proceedings. *Demore*, 538 U.S. at 528. However, the Due Process Clause limits detention without a bond hearing to a "reasonable period." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208 (3d Cir. 2020). Therefore, due process affords

detained noncitizens a bond hearing once the length of their detention becomes unreasonable. *Santos*, 965 F.3d at 211.

Section 1226(c) of the INA provides for the mandatory detention of, among others, noncitizens convicted of certain crimes during removal proceedings. 8 U.S.C. § 1226(c); *Jennings*, 583 U.S. at 305. Although 8 U.S.C. § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, prolonged detention raises due process concerns. *Demore*, 538 U.S. at 531; *Santos*, 965 F.3d at 210. Noncitizens detained under § 1226(c) have the basic due process right to an individualized bond determination once the length of their detention becomes unreasonable. *Santos*, 965 F.3d at 210-11. To determine whether a noncitizen's detention under § 1226(c) has become unreasonable, courts evaluate four factors established by the Third Circuit in *Santos*: (1) the length of the detention; (2) whether the detention is likely to continue; (3) the reasons for any delay that prolongs detention; and (4) whether the noncitizen's conditions of confinement are meaningfully different from criminal punishment. 965 F.3d at 211. The Court will evaluate each *Santos* factor to determine whether Yan's detention has become unreasonable.

A. LENGTH OF DETENTION

Yan contends that his mandatory detention has reached an unreasonable length. (Doc. 8, at 3-4). Yan avers that since that courts in the Third Circuit have found periods of mandatory detention longer than five months to be unconstitutional, his seven-month period of mandatory detention is likewise unconstitutionally prolonged. (Doc. 8, at 3-4). Lowe

counters that Yan's seven-month period of immigration detention is reasonable because it is directly tied to the adjudication of his removal proceedings. (Doc. 7, at 19).

The Third Circuit has identified the first *Santos* factor, duration of detention, as the "most important factor" in evaluating the reasonableness of a noncitizen's detention during removal proceedings. *Santos*, 965 F.3d at 211. While the Third Circuit has not adopted a presumption of reasonableness or unreasonableness for any duration of detention, the Third Circuit has found that detention becomes increasingly suspect after five months. *Santos*, 965 F.3d at 211 (citing *Demore*, 538 U.S. at 515; *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 234 (3d Cir. 2011)); *MicheYan v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026) (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015)) (re-affirming that detention without opportunity for bond becomes unreasonable between six months and one year after it began).

Yan has been in ICE custody for seven months. (Doc. 1, at 3; Doc. 8, at 4). As Yan's detention is two months longer than the Third Circuit's five-month tipping point, Yan's length of detention favors a finding of unreasonableness. *See Santos*, 965 F.3d at 211; *see MicheYan*, 169 F.4th at 433-34. Accordingly, the first *Santos* factor, duration of detention, weighs in favor of unreasonable detention.

B. LIKELIHOOD OF CONTINUED DETENTION

Yan contends that without relief from the Court, his detention is likely to extend throughout his removal proceedings. (Doc. 8, at 4). Yan also indicates that if the BIA denies the appeal of his removal order, he intends to file a petition for review to the Third Circuit, which could add months to his detention. (Doc. 8, at 4). The government counters that this *Santos* factor relies on unhelpful hypothesizing on future events. Nevertheless, the government

avers that the only impediment to finalizing Yan's removal was Yan's July 27, 2026 Master Calendar Hearing. (Doc. 7, at 21).

When a noncitizen's removal proceedings are unlikely to end soon, continued detention without a bond hearing weighs towards a finding of unreasonable detention. *Santos*, 965 F.3d at 211. Courts in the Third Circuit have found that an immigration detainee appealing his or her order of removal creates a likelihood of continued detention that favors granting habeas relief. *J.G.J. v. Sage*, No. 3:26-cv-706, 2026 WL 915576, at *10 (M.D. Pa. April 3, 2026) (citing *Joseph v. Warden*, No. 3:25-cv-02428, 2026 WL 497532, at *2 (M.D. Pa. Feb. 23, 2026)). Further, delays of an undefined duration continue to accrue during administrative proceedings that may be necessary following an appellate court decision. *Bah v. Doll*, No. 3:18-CV-1409, 2018 WL 6733959, at *8 (M.D. Pa. Oct. 16, 2018).

As a result of his appeal to the BIA, Yan's order of removal is not yet final, and he remains in pre-order of removal detention. 8 C.F.R. § 1241.1(c); *see J.G.J. v. Sage*, 2026 WL 915576, at *10. At this time, the undersigned cannot determine precisely how long Yan's removal proceedings will remain pending. However, as Yan appealed his order of removal on August 5, 2026, and the BIA has yet to set a briefing schedule for the appeal, it is unlikely that Yan's removal proceedings will be resolved in the near future. Automated Case Information, Executive Office of Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited August 6, 2026); *see Santos*, 965 F.3d at 212; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10. Depending on the outcome of the BIA appeal, further petition for review to the Third Circuit could follow, which would further prolong the duration of Yan's removal proceedings. (Doc. 8, at 4); *see Bah*, 2018 WL 6733959, at *8. As such, the second *Santos* factor weighs in favor of a finding of unreasonableness. *See*

*Santos*, 965 F.3d at 212; *see Bah*, 2018 WL 6733959, at *8; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10.

C. Reasons for Delays

Yan contends that his good-faith pursuit of relief should not be held against him in weighing the reasons for delays. (Doc. 8, at 5). Yan also avers that the government has not demonstrated bad faith and that nothing in the record reflects carelessness or unreasonably delay. (Doc. 8, at 5). Lowe contends that Yan's proceedings have moved forward at a normal rate for noncitizens who contest their removability. (Doc. 7, at 21-22). The government also avers that it has not intentionally delayed or unreasonably prolonged Yan's proceedings. (Doc. 7, at 21-22).

In evaluating the third *Santos* factor, courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay. *Santos*, 965 F.3d at 211. Courts should not hold a noncitizen's good-faith challenge to removal against him, even when his appeals or petitions for review have drawn out the proceedings. *Santos*, 965 F.3d at 211. Courts should also decline to hold legal errors against the government unless there is evidence of carelessness or bad faith. *Santos*, 965 F.3d at 211. Nevertheless, detention can still grow unreasonable in the absence of governmental bad faith. *Santos*, 965 F.3d at 211.

While Yan's removal proceedings have been ongoing for seven months, the government has not demonstrated carelessness or bad faith that would cause unnecessary delay. *See Santos*, 965 F.3d at 212 (citing *Diop*, 656 F.3d at 224-25) (finding unnecessary delay where an immigration judge repeatedly issued decisions that were so unclear that they required remands for clarification and the government was slow to produce evidence relevant

to whether petitioner was properly detained). Likewise, Yan's appeal to the BIA should not be held against him in evaluating the reasons for delay. *See Santos*, 965 F.3d at 211. Accordingly, the reasons for the delay of Yan's removal proceedings are a neutral factor in weighing whether Yan's detention is unreasonable.

D. CONDITIONS OF CONFINEMENT

Yan contends that his conditions of confinement heavily favor a finding of unreasonable detention because he is confined at a county jail alongside criminal detainees. (Doc. 8, at 5). Yan also avers that his conditions of confinement are unreasonable because he has suffered untreated skin and eye conditions, depression, and suicide ideation while in immigration detention at the Pike County Correctional Facility. (Doc. 8, at 6; Doc. 8-1, at 1). Lowe counters that the conditions of Yan's detention are not punitive because Yan is not confined to his cell for twenty-three hours a day. (Doc. 7, at 22).

To evaluate the conditions of confinement, courts examine whether the noncitizen's conditions of confinement are "meaningfully different" from criminal punishment. *Santos*, 965 F.3d at 211. If a noncitizen's civil detention under § 1226(c) looks penal, that shifts the scale towards finding the detention unreasonable. *Santos*, 965 F.3d at 211. When an immigration detainee is housed in a criminal facility among criminal detainees, their conditions do not meaningfully differ from criminal punishment. *Santos*, 965 F.3d at 212; *Lopez v. Warden, Pike Cnty. Corr. Facility*, No. 3:26-cv-673, 2026 WL 1147839, at *3 (M.D. Pa. April 28, 2026). The Pike County Correctional Facility is a county jail that houses criminal detainees alongside civil immigration detainees. *Santos*, 965 F.3d at 213; *Rahmatov v. Lowe*, No. 3:26-cv-553, 2026 WL 837974, at *3 (M.D. Pa. March 26, 2026); *Lopez*, 2026 WL 1147839, at *3.

The Court is not persuaded by Lowe's argument that Yan's detention is not penal because he is not confined to his cell for twenty-three hours a day. (Doc. 7, at 22). An immigration detainee need not be subject to extreme punitive conditions, such as twenty-three hours of confinement a day, for their detention to be akin to criminal punishment. *Lopez*, 2026 WL 1147839, at *3. Yan is detained at the Pike County Correctional Facility alongside criminal detainees, he has suffered adverse health effects because of the conditions of his confinement, and he was placed in solitary confinement for three days. (Doc. 8, at 3, 5-6). Accordingly, the Court finds Yan's conditions of confinement to be indistinguishable from criminal punishment, weighing in favor of unreasonable detention. *See Santos*, 965 F.3d at 213; *see Rahmatov*, 2026 WL 837974, at *3; *see Lopez*, 2026 WL 1147839, at *3. Taking the four *Santos* factors together, the length and conditions of Yan's detention weigh towards unreasonable detention in violation of the Due Process Clause of the Fifth Amendment. *See Santos*, 965 F.3d at 211; *see MicheYan*, 169 F.4th at 433-35. Yan's petition for writ of habeas corpus (Doc. 1) is **GRANTED**.

E. REMEDY

Yan requests relief in the form of release from custody or, in the alternative, a bond hearing at which the government must prove, by clear and convincing evidence, that continued detention is necessary. (Doc. 1, at 12; Doc. 8, at 8). The appropriate remedy is for the Court to provide Yan with a bond hearing at which the government bears the burden of proof to justify Yan's continued detention with clear and convincing evidence. *Santos*, 965 F.3d at 213. District courts may conduct bond hearings in habeas corpus cases brought by immigration detainees. *J.G.J.*, 2026 WL 915576, at *11 n.19 (collecting cases). District courts in the Third Circuit have exercised such authority to conduct bond hearings under habeas

jurisdiction, particularly where there is a risk of further injury due to delay. *See Centeno-Martinez v. Jamison*, No. 25-3593, 2025 WL 3157711, at *3 (M.D. Pa. 2025) (citing *Leslie v. Holder*, 865 F. Supp. 2d 627, 634-35 (M.D. Pa. 2012); *Thaxter v. Sabol*, No. 14-02413, 2016 WL 3077351, at *3 (M.D. Pa. June 1, 2016). Considering the risk of further injury with delays and continued detention, the Court will conduct Yan's individualized bond hearing. *See J.G.J.*, 2026 WL 915576, at *11 n.19 (collecting cases); *see Centeno-Martinez*, 2025 WL 3157711, at *3 (citing *Leslie*, 865 F. Supp. 2d at 634-35; *see also Thaxter*, 2016 WL 3077351, at *3.

## V. CONCLUSION

For the foregoing reasons, Yan's petition for writ of habeas corpus (Doc. 1) is **GRANTED**. The Court **ORDERS** a bond hearing to be held before the undersigned on **TUESDAY, AUGUST 25, 2026 at 11:30 a.m.** in Courtroom #1 of the William J. Nealon Federal Building and United States Courthouse.

An appropriate Order follows.

**BY THE COURT:**

**Dated: August 6, 2026**

/s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States District Judge**